MURDOCK, Justice
(concurring in the result in part and dissenting in part).
I concur in the result reached by the main opinion as to the negligence claim asserted by Jacklyn McMahon and Donald McMahon. I respectfully dissent as to the main opinion’s conclusion that the trial court erred in not submitting to the jury the McMahons’ wantonness claim.
Before explaining the reasons for my votes on the aforesaid issues, I first take this opportunity to address the evidentiary issue discussed in Part II of the main opinion. Insofar as the main opinion reasons that a chart describing 26 fatal accidents involving the type of vehicle at issue should have been excluded on the ground that a sizeable number of the fatalities referenced in the excluded evidence were the result of accidents involving risk factors not present in this case, I can and do agree with the result reached by the main opinion with respect to upholding the trial court’s exclusion of that chart. I do not, however, see how the same reasoning is relevant to the exclusion of the particular language the trial court redacted from the press release jointly issued by the Yamaha defendants and the Consumer Product Safety Commission (“CPSC”). The redacted language clearly indicates that “[m]ore than two-thirds” of “more than 50 incidents” involving the type of vehicle at issue were “rollovers” and that “many appeared] to involve turns at relatively low speeds and on level terrain.” The fact that some of these incidents resulted in injuries so severe as to cause death only serves to enhance the import of the report for the purpose for which the McMahons sought to introduce it, namely as evidence indicating that the Yamaha defendants were aware of the risk of serious physical injury that existed in connection with use of the Rhino 660. Nonetheless, because the language in question was part of a press release issued jointly by the CPSC and the Yamaha defendants as part of an agreed-upon disposition by the CPSC of an investigation by it into the Yamaha Rhino, it appears that this language was due to be excluded in any event as a matter of law under Rule 408, Ala. R. Evid. (providing that “[e]vidence of conduct or statements made in compromise negotiations is ... not admissible”).
That said, I respectfully dissent from the result reached in Part I of the main opinion relating to the McMahons’ wantonness claim against the Yamaha defendants. I cannot conclude that there was substantial evidence of wantonness so as to have required the submission of this claim to the jury.
As to the McMahons’ negligence claim, I agree with the result reached in Part I of the main opinion, but I decline to join the analysis contained therein. Without limiting the foregoing, I write briefly to comment on one particular aspect of that anal *777 ysis. Specifically, the main opinion notes that, “[i]n returning a verdict in favor of the Yamaha defendants on the AEMLD claim, the jury necessarily concluded either (1) that the McMahons failed to establish that the Yamaha Rhino was an unsafe product, or (2) that the Yamaha defendants successfully established that Jacklyn’s accident was the result of contributory negligence on Jacklyn’s part.” 95 So.3d at 772. I note that, in addition to contributory negligence, the jury was instructed as to the elements of the affirmative defense of assumption of the risk with respect to the McMahons’ AEMLD claims. Accordingly, it would also be appropriate to observe, at least with respect to the risk attendant to the lack of doors on the vehicle, that the jury’s verdict in favor of the Yamaha defendants on the AEMLD claim could have been a result of a finding of an assumption of the risk on Jacklyn’s part. Cf. Abney v. Crosman Corp., 919 So.2d 289 (Ala.2005) (discussing the open and obvious nature of an air rifle as a defense to a failure-to-warn claim); Griffin v. Summit Specialties, Inc., 622 So.2d 1299 (Ala.1993) (discussing the open and obvious nature of a product as a defense to an action alleging a design defect brought under Georgia law).